UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STAN McADAMS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:18-cv-00675-RDP |
| } | |
| THE JEFFERSON COUNTY 911 } | |
| EMERGENCY COMMUNICATIONS } | |
| DISTRICT, INC., } | |
| } | |
| Defendant. | |

**MEMORANDUM OPINION**

This case is before the court on the Motion to Dismiss filed by Defendant Jefferson County 911 Emergency Communications District, Inc. ("Jefferson County 911" or "Defendant"). (Doc. # 13). The parties have fully briefed the Motion. (Docs. # 14, 17, 18). For the reasons explained below, the court finds that the Motion to Dismiss (Doc. # 13) is due to be granted.

**I.     Relevant Facts**[1]

In October 2013, Plaintiff Stan McAdams ("McAdams" or "Plaintiff") began his employment with Jefferson County 911 as a dispatcher for 911 fire services. (Doc. # 10 at ¶ 9). McAdams was later promoted to a POD leader position. (*Id.*). In November 2014, he was diagnosed with and treated for Multiple Sclerosis and had to take off approximately three months of work. (*Id.* at ¶ 10). On December 9, 2015, McAdams was promoted to Night Shift supervisor for fire dispatch. (*Id.* at ¶ 11).

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving the Motion to Dismiss (Doc. # 13), the court treats the facts alleged in the Amended Complaint (Doc. # 10) as true.

Sometime in late 2016 or early 2017, it became increasingly difficult for McAdams to work the night shift because of his Multiple Sclerosis. (*Id.* at ¶ 16). McAdams presented the Chief Operations Officer ("COO") with a letter from his physician requesting an accommodation, and McAdams requested transfer to a day shift supervisor's position. (*Id.* at ¶¶ 17-18). Initially, the COO told McAdams that there was a "good possibility" that he would receive his requested transfer; however, later, the COO informed McAdams that the Director/Chief Executive Officer ("CEO") had rejected the transfer. (*Id.* at ¶¶ 20-21).

In February 2017, the CEO decided to reduce the number of supervisors from six supervisors to four. (*Id.* at ¶ 22). One supervisor had previously been demoted, leaving five individuals to fill these four positions. (*Id.* at ¶ 23). On August 8, 2017, each of the five individuals (including McAdams) were directed to submit a resume and essay entitled "why I want to be a supervisor" by August 14, 2017. (*Id.* at ¶ 24). Jefferson County 911 did not select McAdams as one of the four supervisors. (*Id.* at ¶ 27). McAdams contends that he was more qualified than one of the other selected supervisors and that one of the other selected supervisors was selected in part due to additional training he received that McAdams was not allowed to receive. (*Id.* at ¶¶ 12-15, 27-28). On September 26, 2017, the CEO, COO, and Chief Administration Officer ("CAO") met with McAdams and informed him that he was being demoted and moved to the day shift. (*Id.* at ¶ 29). During this meeting, the CAO told McAdams, "If you go to the dayshift, it will be better for your MS." (*Id.* at ¶ 30).

McAdams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 21, 2018. (Doc. # 1-1 at p. 4). On March 28, 2018, the EEOC sent Plaintiff a Right to Sue Notice, which Plaintiff received on April 2, 2018. (Docs. # 1-1 at p. 1; 10 at ¶ 4). Plaintiff filed this action on May 1, 2018. (Doc. # 1). On June 12,

2018, Plaintiff filed his Amended Complaint, alleging Americans with Disabilities Act ("ADA") claims related to purported disability discrimination. (Doc. # 10). On July 6, 2018, Defendant filed its Motion to Dismiss, arguing that this action is due to be dismissed because Jefferson County 911 enjoys Eleventh Amendment immunity from this suit. (Docs. # 13, 14).

**II.     Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III. Analysis

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The Eleventh Amendment bars suit against any "arm of the state," including "agents and instrumentalities of the State." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (plurality opinion).

There are two exceptions to Eleventh Amendment immunity:

> First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct.

4

> 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "In the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Carr*, 916 F.2d at 1524-25 (internal footnote omitted and alterations adopted). Neither party argues that either exception is present in this case.[2] Instead, the parties' dispute comes down to the more threshold question of whether Jefferson County 911 is an "arm of the state," and, thus, immune from this action. (*See* Docs. # 14, 17, 18).

Courts in the Eleventh Circuit consider four factors in deciding whether a state entity is an "arm of the state" entitled to sovereign immunity: "'(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.'" *Lake v. Skelton*, 871 F.3d 1340, 1341 (11th Cir. 2017) (quoting *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003) (en banc)). The governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an "arm of the state." *Haven v. Bd. of Trustees of Three Rivers Reg'l Library Sys.*, 625 F. App'x 929, 933 (11th Cir. 2015). In this case, Jefferson County 911 argues that it is an "arm of the state" entitled to immunity because (1) it was formed through state legislation, (2) the manner in which it receives funding gives the State of Alabama complete control over its operations, and (3) the State of Alabama is responsible for its funding and the satisfactions of judgments against it. (Doc. # 14 at p. 6). Plaintiff counters that the State of Alabama "has no control over" Defendant and Jefferson County 911 derives its funds from private companies. (Doc. # 17 at p. 3-4). The court agrees with Defendant.

---

[2] Plaintiff does not dispute that the ADA has not waived sovereign immunity. (*See* Doc. # 17).

Jefferson County 911 is an emergency communications district created under the Emergency Telephone Service Act ("ETSA"), Ala. Code § 11-98-1 *et seq.*, "as a political and legal subdivision[] of the state." *See* Ala. Code § 11-98-2. A statewide 911 Board, which consists of thirteen members who are appointed by the Governor of Alabama, governs communications districts throughout the State of Alabama and appoints boards of commissioners for communications districts, such as Jefferson County 911. *See id.* at §§ 11-98-4, 11-98-4.1. The Alabama Legislature provides oversight of the 911 Board through the Permanent Oversight Commission, which collaborates with the 911 Board to recommend legislation to implement any long-term plans. *See id.* at § 11-98-4.1(e)(1), (8). The 911 Board also must seek approval from the Permanent Oversight Commission before adopting or implementing any rules in accordance with the Administrative Procedure Act. *See id.* at § 11-98-4.1(e)(8). Although the boards of commissioners of communications districts have the authority and powers necessary to establish, operate, maintain, and replace an emergency communication system,[3] they must seek approval from the 911 Board in order to acquire, dispose of, or make improvements to real property. *See id.* at § 11-98-4(f), (h).

The 911 Board and communications districts are financed by the 911 Fund. *See id.* at §§ 11-98-4.1, 11-98-5, 11-98-5.2. Among other powers and duties, the 911 Board has the authority to administer the 911 Fund and to distribute revenue from the 911 Fund. *See id.* § 11-98-4.1(e). The Alabama Supreme Court has summarized the 911 Fund as follows:

> [Section] 11-98-5 [] provide[s] for a "single, monthly statewide 911 charge . . . on each active voice communications service connection [wireline and mobile telephones] in Alabama that is

---

[3] Boards of commissioners also have the authority to (1) sue and be sued, to prosecute, and defend civil actions; (2) acquire or dispose of property; (3) construct, enlarge, equip, improve, maintain, and operate all aspects of an emergency communication system; (4) borrow money; (5) provide for liability and hazard insurance; (6) enter into contracts or agreements with public or private safety agencies for dispatch services; and (7) make grants to municipalities for dispatching equipment and services. *See* Ala. Code § 11-98-4(f).

> technically capable of accessing a 911 system." § 11-98-5(a), Ala.Code 1975. The telephone-service providers are required to collect the 911 charges from the telephone-service subscribers on a monthly basis and then to remit the 911 charges collected to the 911 Board. § 11-98-5(a) and (b), Ala.Code 1975. The 911 charges are then deposited in the 911 fund for subsequent distribution to the emergency-communications districts. § 11-98-5.2(b)(1), Ala.Code 1975. . . . [Section] 11-98-13, Ala.Code 1975, . . . requires the 911 Board to conduct a biennial audit of the telephone-service providers in order to ensure the accuracy of the 911 charges and other information required to be submitted to the 911 Board by the telephone-service providers.

*Century Tel of Alabama, LLC v. Dothan/Houston Cty. Commc'ns Dist.*, 197 So. 3d 456, 459 (Ala. 2015). Accordingly, the 911 Board collects the legislatively-authorized 911 charges to finance the 911 Fund and distributes the 911 Fund to communications districts to finance their operations. *See* Ala. Code. §§ 11-98-4.1, 11-98-5, 11-98-5.2.

Plaintiff argues that Jefferson County 911 is not an "arm of the state" because the Alabama Supreme Court held that an emergency communications district was not a state agency entitled to immunity in *Wassman v. Mobile County Communications District*, 665 So.2d 941 (Ala. 1995). (Doc. # 17 at p. 2-3). But that argument misses the mark for at least two reasons. First, *Wassman* was decided before the 2012 amendments to the ETSA, which became effective on October 1, 2013. At the time *Wassman* was decided, communications districts were structured differently. *See Century Tel of Alabama*, 197 So. 3d at 459 (explaining that the 2012 ETSA amendments created a statewide 911 Board that replaced and superseded the Commercial Mobile Radio Service Board). Previously, communications districts were not under the authority of the statewide 911 Board. *See id*. Rather, they were under the authority of counties and municipalities. *See Wassman*, 665 So. 2d at 943-44 (noting that an Alabama county is not an agency of the state for civil liability purposes and explaining that counties and municipalities created communications districts under the previous version of the ETSA).

7

Second, the 2012 ETSA amendments also changed the method of funding communication districts, such as Jefferson County 911. *Compare Wassman*, 665 So. 2d at 944 *with* Ala Code. §§ 11-98-5, 11-98-5.2. *See also Century Tel of Alabama*, 197 So. 3d at 459 ("The amended version of § 11-98-5 did not retain subsection (e), which allowed the emergency-communications districts, at their discretion, to require the telephone-service providers to submit to an annual audit of the service providers' books and records with respect to the collection and remittance of 911 charges.") Prior to the 2012 ETSA amendments, communications districts were funded by the municipalities in each district. *See Wassman*, 665 So. 2d at 944 (explaining that under the previous ETSA counties and municipalities provided funding for communications districts). However, as of October 1, 2013, communications districts, such as Jefferson County 911, are funded through statewide 911 charges. *See Century Tel of Alabama*, 197 So. 3d 456, 459 ("As part of the 2012 amendments, the legislature substantially amended § 11-98-5 to provide for a 'single, monthly statewide 911 charge . . . on each active voice communications service connection [wireline and mobile telephones] in Alabama that is technically capable of accessing a 911 system.'") (quoting Ala. Code § 11–98–5(a)) (bracketed text in original). As such, *Wassman* is disguisable from this case because it was decided before the 2012 ETSA amendments. *Cf. id.* ("In 2012, the Alabama Legislature enacted Act No. 2012-293, Ala. Acts 2012, which substantially overhauled the ETSA.").

After carefully reviewing the statutes that created Jefferson County 911, the control that the State of Alabama maintains over Jefferson County 911 through the 911 Board, and the structure of the statewide 911 Fund that finances Jefferson County 911, the court finds that Defendant has carried its burden in establishing that Jefferson County 911 is an "arm of the

state." As an "arm of the state," Jefferson County 911 is immune from liability in this action, and Defendant's Motion to Dismiss (Doc. # 13) is due to be granted.

## IV. Conclusion

After careful review, the court concludes that the Motion to Dismiss (Doc. # 13) is due to be granted. Furthermore, because Defendant is immune from liability in this action, this case is due to be dismissed with prejudice. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this July 30, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE